## WALRATH v. REDFIELD.

In a lease of land adjoining Chittenango creek, upon which the lessee was to construct a saw-mill and a canal for supplying it with water, it was stipulated that the same should be so constructed " as in no respect to interfere with the rights of the State to use the waters of Chittenango creek as a feeder to the Erie canal:" *Held*, no acknowledgment that the State, which was a stranger to the lease, had any right to the use of such waters.

An agent of the State having taken such water under a claim of permanent right and thereby misled the plaintiff and induced him, instead of seeking his damages as for a temporary appropriation, to bring an action to try the right of permanent use, is estopped from changing his ground and setting up a temporary appropriation.

But a mere declaration of the defendant, made after the fact, to a stranger, in respect to the character and purpose of his appropriation, is not, of itself, evidence on which to base an estoppel *in pais*.

The case of *Lynch* v. *Stone* (4 *Denio*, 356), commented on and explained.

SMITH.—VOL. IV. 58

In tort the allowance of interest, from the time of bringing the action, upon the items of damage sustained by the plaintiff, properly submitted to the jury.

APPEAL from the Supreme Court. Action on the case for damages sustained by the erection of a dam below the plaintiff's saw-mill, by means of which the water was set back upon his wheel. The defendant justified as a superintendent of repairs on the Erie canal, alleging that the acts complained of were committed by him in making a temporary appropriation of the water by turning it into the Erie canal, in pursuance of directions of the canal commissioners. There were four trials, the last of which was at the Madison Circuit, before Mr. Justice SHANKLAND, in October, 1854. The plaintiff gave in evidence, as a part of his title, a lease dated May 7, 1829, by John B. Yates to Abram and Daniel Walrath, of the premises on which the saw-mill described in the pleadings was afterwards erected A clause therein, which was insisted upon as an admission on the part of the plaintiff of a right in the State to the permanent use of the water for feeding the Erie canal, is stated in the following opinion. There was evidence that shortly after the defendant had erected the dam complained of, he declared to a person, not the plaintiff or his agent, that he had done so on purpose to bring up the question of the right of the State to the permanent use of the water. In respect to this the judge charged the jury that the defendant had a right to take the water in question as a temporary appropriation, upon his showing that the navigation of the Erie canal required it, but that if he took the water, as he said he did, for the purpose of testing the right of the State to the water as a permanent appropriation, then the defendant could not now defend himself upon the ground of a temporary appropriation. The defendant took an exception.

The judge submitted to the jury certain items of damage as proper for their consideration separately, and also " what is the interest on the sum total of the above damages from

the commencement of this action in June, 1846, up to the date of the trial?" The defendant took an exception. The jury found a verdict for the plaintiff, assessing his damages at $3,800, of which $1,400 was composed of interest on the other items. The judgment entered on the verdict was affirmed at general term in the sixth district, and the defendant appealed to this court.

*Lyman Tremain*, attorney-general, for the appellant.

*Timothy Jenkins*, for the respondent.

SELDEN, J. Although a greater number of exceptions were taken at the trial, yet, upon the argument in this court, three points only were raised. It is insisted: 1. That the judge erred in instructing the jury that the clause in the lease from John B. Yates to Abram and Daniel Walrath, referring to some right on the part of the State to use the waters of the creek, as a feeder to the Erie canal, did not amount to an acknowledgment that the State had such right; 2. That he erred in instructing the jury that if the defendant took the water, as he said he did, as a permanent appropriation, he could not defend himself upon the ground of a temporary appropriation; and, 3. That he also erred in permitting the jury to allow interest by way of damages.

The clause in the lease from Yates, upon which the first of the above questions arises, was as follows: "And the aforesaid mill, together with the appurtenances, shall in all respects be built, constructed and executed in a good, permanent and substantial manner, and in no respect to injure or interfere either with said Chittenango canal, *or the rights the State to use of* the water of the Chittenango creek as a feeder to the Erie canal." The judge charged the jury in respect to this clause that it "was not evidence of any acknowledgment that the State had a right to use the waters;" and to this the defendant's counsel excepted.

To appreciate the force of this exception it is necessary to ascertain precisely the view in which the clause in question is to be regarded, if at all, as a concession of the right claimed. It does not purport to grant any right to the State ; nor can it operate by way of reservation to transfer any such right. The State is not a party to the lease ; and it is well settled that a reservation in a deed to a stranger is void. (*Hornbeck* v. *Westbrook*, 9 *John.*, 73.) It is equally clear that the State cannot avail itself of the clause as an estoppel. Estoppels must be mutual ; and none can avail themselves of them except parties or privies. It is only, therefore, as a mere declaration made in a transaction *inter alios*, that it can have any operation. Is it then an acknowledgment of which the State can avail itself? It does not in terms admit any right in the State. It is by implication only that it can be construed to concede such right. But why make such an implication in behalf of a mere stranger to the transaction. Parties are not bound to guard their language in respect to the rights of third persons with the same care as they must in regard to those of the persons with whom they are dealing.

The clause in question is a mere covenant on the part of the lessees so to construct the mill which they were to build as not to interfere with any rights the State might have. This was its object, and this interpretation gives full effect to its language. To estimate the force of the clause we must consider the motive for its insertion. It could have been no part of the lessor's object either to confer any right upon the State or to obtain evidence of any such right. This is apparent from the utter vagueness of the clause in respect to the extent of the right. The sole object must have been to protect the rights of the State, if any it had ; leaving the latter to establish those rights by appropriate evidence. There could be no reasonable objection to such a clause on the part of the lessees, whether the State had any rights or not. But the position of the defendant's coun-

Walrath *v.* Redfield.

sel virtually assumes that they were bound to add to the clause in question the words " if any it has," or other equivalent words, for the purpose of avoiding an implication, not in favor of the other party to the deed but of an utter stranger. I know of no rule, either of law or reason, which would require this. In a case where it became material, the clause in question would no doubt be evidence of notice to the lessees of the rights of the State; and this, I think, is the only force which can be given to it in favor of the latter.

The second point made by the counsel for the defendant is based, in part, upon a misinterpretation of the language of the judge. The jury were not instructed that the mere declaration of the defendant that he took the water under a claim of right on the part of the State to their permanent use, would *per se* preclude him from justifying upon the ground of a temporary appropriation. The position assumed by the plaintiffs' counsel upon the trial, as it is fair to presume from the evidence given, was, that if the defendant had taken the water avowedly under a claim of permanent right in the State, and had thus misled the plaintiffs and induced them, instead of obtaining an appraisal of their damages, as in cases of temporary appropriation, to bring this suit for the purpose of testing the right claimed, then the defendant would be estopped from now changing his ground.

The correctness of this position cannot be doubted. Such being the facts, it would be a palpable case for the application of the principle of *estoppel in pais*. The case of *Lynch* v. *Stone* (4 *Denio*, 356), as it seems to have been understood by the court, does not hold the contrary. It is evident from the opinion of Chief Justice BRONSON, in that case, that he regarded it as having been so clear that the water was actually taken as a mere temporary appropriation—whatever the commissioner might have said—that no one could have been misled by his declarations on the subject. It was no doubt the doctrine of *estoppel in pais*, as above explained, that the

charge of the judge in this case was intended to inculcate. The substance of his instruction to the jury was, that if the defendant had actually taken the water avowedly for the purpose of testing the right of the State to the water as a permanent appropriation, he could not now, in this action, brought by the plaintiffs with the express view of trying that right, set up and justify himself under a different right.

Perhaps the most plausible objection which could be made to this part of the charge is, that it does not in terms say that it is essential to the estoppel that the plaintiffs should have been led to suppose that the defendant had taken the water under claim of a right to its permanent use, and should have acted on that supposition. This objection, however, is not made by the defendant's counsel, nor do I think it could be sustained if made. The idea must have been clearly developed in the course of the trial and of the arguments of counsel, and was plainly implied in what was said when taken in connection with the nature of the action and the evidence which had been given. The defendant's counsel, if he wished a more full and explicit statement of the principle, should have called the attention of the judge to the point.

The only remaining question is as to the allowance of interest. The jury were not instructed to allow interest, but its allowance was submitted to their discretion. There was no error in this. In general, in actions *ex delicto*, it is in the discretion of the jury whether to allow interest by way of damages or not. There is no ground for making this case an exception to the rule. The judgment of the Supreme Court must, therefore, be affirmed.

DENIO and ROOSEVELT, Js., dissented; all the other judges concurring,

Judgment affirmed.